UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

EVERICK L. MONK                                                                                    PLAINTIFF

v.                                    Civil No. 1:11-cv-01054

SHERIFF FOSTER;
CAPTAIN TRUMAN YOUNG;
LIEUTENANT JANET DELANEY;
SERGEANT DAVIS; and
NURSE MANESS                                                                                       DEFENDANTS

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff, Everick Monk, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment[1] (ECF No. 24); Brief in Support of Their Motion for Summary Judgment (ECF No. 25); and Statement of Facts (ECF No. 26). Plaintiff filed a Response to Motion For Summary Judgment utilizing a questionnaire from the Court. ECF No. 40. Defendants replied. ECF No. 41. After careful consideration of the briefing, the undersigned makes the following Report and Recommendation.

---

[1] The Court notes the document filed at ECF No. 24 is titled Motion for Extension of Time to File Motion for Summary Judgment, however, the text of the documents is a Motion for Summary Judgment, therefore, the Court will treat it as such.

I.   BACKGROUND

The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Columbia County Detention Center ("CCDC") in Magnolia, Arkansas.  Plaintiff was arrested and booked into the CCDC on May 18, 2010. ECF No. 40, p. 1.  Plaintiff is no longer incarcerated.  Plaintiff filed the instant Complaint on September 16, 2011.  ECF No. 1.  Plaintiff alleges his constitutional rights were violated when Defendants failed to protect him and denied him medical care.  ECF No. 1, pp. 4-5.  Plaintiff has brought this action against Defendants in both their official and individual capacities.  ECF No. 40, p. 18.

In his Complaint, Plaintiff claims: (1) on May 26, 2010, Sergeant Davis ("Davis") failed to protect Plaintiff from another inmate even though Davis witnessed a heated argument between the two and the subsequent fight (ECF No. 1, p. 4); (2) Plaintiff suffered a busted lip and a broken finger from the fight on May 26, 2010 (ECF No. 1, p. 4); (3) Lieutenant Delaney ("Delaney") observed Plaintiff's injuries immediately following the fight but denied Plaintiff medical care (ECF No. 1, p. 4); (4)  Plaintiff saw Nurse Maness ("Maness") a few days later at sickcall for possible tuberculosis or strep throat and informed her of his lip and finger injury at that time (ECF No. 1, pp. 4-5); (5) Maness informed Plaintiff he would see a doctor soon (ECF No. 1, p. 5); (6) in early June 2010, Plaintiff filed another request to Maness and she replied telling Plaintiff he would see a doctor at the clinic (ECF No. 1, p. 5); (7)  around June 20, 2010, Plaintiff informed Captain Young ("Young") and Sheriff Foster ("Foster") that he was being denied adequate medical care (ECF No. 1, p. 5); (8) in July 2010, Plaintiff again complained to Maness of his continued pain and suffering with his finger, coughing, congestion, sweats, and weight loss  (ECF No. 1, p. 5); (9) Plaintiff was examined by a doctor, a x-ray was taken of his finger, and he was tested for

tuberculosis sometime between July 20 - 24, 2010 (ECF No. 1, p. 5); (10) the x-ray showed Plaintiff's finger was broken but Plaintiff did not receive results on his tuberculosis test (ECF No. 1, p. 5).

In his Response, Plaintiff clarified his claims against Foster, Young, and Delaney include that they allowed the officers to deny him protection because of his status as a sex offender. ECF No. 40, pp. 19-20. Plaintiff also claims Davis failed to ensure he received medical care after the fight with Alexander because Plaintiff is a sex offender. ECF No. 40, p. 20.[2]

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[2] The Court notes that Plaintiff did not specifically make this claim based on his status as a sex offender in his Complaint, however, he did specifically allege in his Response that his claims were against Defendants in both their official and individual capacities and he also specifically alleged officers were allowed to deny him protection and proper medical care based on his status as a sex offender. ECF No. 40, pp. 19-21. Defendants had an opportunity to respond to these claims in their Reply. ECF No. 41, pp. 1-2. Therefore, the Court will consider them here. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment).

242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

In their Motion for Summary Judgment and Brief in Support, Defendants argue: (1) Plaintiff did not name any Defendant in his or her individual capacity; (2) Plaintiff failed to allege an unconstitutional county policy or custom supporting his official capacity claims; (3) Plaintiff cannot hold Defendants vicariously liable under Section 1983; (4) Defendants did not fail to protect Plaintiff; and (5) Defendants were not deliberate indifferent to Plaintiff's serious medical needs.  Additionally, in their Reply, Defendants argue Plaintiff failed to show Foster, Young, or Delaney had any personal involvement in the conduct Plaintiff claims violated his constitutional rights, and Defendants did not fail to protect Plaintiff.

#### A.    **Official capacity claims**

Plaintiff claims Defendants violated his constitutional rights by failing to protect him and denying him medical care in both their official and individual capacities.  ECF No. 40, p. 18.  Plaintiff describes the custom or policy of Columbia County that violated his rights:

> That under the color of State law, I am a ward of the state and my health care & protection from harm is in these employees hands.  an cannot be denied adequate medical care.  Also prejudiced and Judged due to prior sex conviction.

ECF No. 40, p. 18 (errors in original).  Further, Plaintiff claims Defendants were allowed to deny

4

him protection and proper medical care because he is a sex offender.  ECF No. 40, pp. 19-20.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998).  Plaintiff's vague claims that defendants failed to protect him and ensure he received proper medical care because he is a sex offender cannot support an official capacity claim against Columbia County.  "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights.  *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).  There is no evidence on the record to support Plaintiff's official capacity claim.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED** as to Plaintiff's official capacity claims against all Defendants.

> **B.**     <u>**Failure to Protect**</u>

Plaintiff alleges Davis failed to protect him from a fellow inmate ("Alexander") on May 26, 2010, even though, Davis witnessed the heated argument between the inmates that preceded

the fight. ECF No. 1, p. 4. Additionally, Plaintiff alleges Foster, Young, and Delaney allowed officers to deny Plaintiff protection because he is a sex offender. ECF No. 40, pp.19-20.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis,*" however, "[n]o clear line divides *de minimis* injuries from others." *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008).

Defendants argue Plaintiff cannot prove he was subjected to a substantial risk of harm, over

6

and above the risk inherently attendant to incarceration.  Additionally, Defendants argue Plaintiff cannot show Davis or any other Defendant was aware a physical altercation between Plaintiff and Alexander was imminent.  ECF No. 25, p.7.

According to Davis's incident report, on May 25, 2010,[3] Plaintiff and Alexander began arguing over a bottom bunk.  Davis removed both Plaintiff and Alexander from the pod to settle the argument.  Both Plaintiff and Alexander informed Davis the incident was settled, and Davis returned both men to the pod.  After Davis returned to the control room, he heard a commotion from the pod and returned to see Plaintiff on the floor with Alexander standing over him.  Davis immediately removed Plaintiff from the pod.  ECF No. 26-1, p. 12.

Plaintiff does not dispute that he engaged in an argument with Alexander over moving to the empty bunk or that Davis removed Plaintiff and Alexander from the pod to settle the argument. ECF No. 40 pp. 1, 3.  However, Plaintiff claims that Davis knew a fight "was gonna come because [he] had stopped talking."  ECF No. 40, p. 3.  Plaintiff could not agree or disagree with Davis's account that both Plaintiff and Alexander informed him the dispute was settled.  Instead, Plaintiff responded with: "I can only say I told him that he could see I wasn't arguing only moving to the empty bed and he was moving toward me, as for me it was over but I wouldn't let him put his hands on me without defending myself." ECF No. 40, p.4.  Plaintiff also explained to Davis prior to the fight that Alexander was acting aggressively toward Plaintiff and Plaintiff believed Alexander was trying to fight him. ECF No. 40, p. 4.  Plaintiff states, under penalty of perjury in his Response, that he did inform Davis that he feared for his safety after the verbal altercation.

---

[3] Davis's incident report reads May 25, 2010, but in his Complaint, Plaintiff claims the altercation occurred on May 26, 2010.  ECF No. 1, p. 4.  The Court will use May 26, 2010 as the date of the altercation for the purpose of this Report and Recommendation.

ECF No. 40, p. 6.  The Court notes, however, that Plaintiff's explanation of how he informed Davis of this fear calls into question whether he actually told Davis he believed Alexander would attempt to fight him if they were placed back in the pod together, or he simply described Alexanders actions and expected Davis to infer the risk of an imminent fight.  ECF No. 40, p. 6.

In their Reply, Defendants argue Plaintiff failed to produce any evidence that he was subjected to a substantial risk of harm, over and above the risk inherently attendant to incarceration.  Additionally, Plaintiff failed to show that Davis was aware of any known risk of physical harm to Plaintiff.  ECF No. 41, p. 5.  In Davis's Affidavit, attached to the Reply, he states he spoke with both Plaintiff and Alexander separately and together when he pulled them from the pod on May 26, 2010.  Both men assured Davis the dispute was settled.  ECF No. 41-2.  Davis states he had no knowledge of any threats made by Alexander to Plaintiff or that Alexander posed any threat to Plaintiff's safety.  ECF No. 41-2.

    i.  <u>Individual capacity claims against Defendant Davis</u>

It is undisputed that a verbal altercation occurred between Plaintiff and Alexander, and Alexander was the aggressors in the situation.  Davis pulled both men out of the pod to resolve the situation and Alexander informed Davis the issue was settled prior to Davis returning the men to the pod.

The first consideration is whether Plaintiff was incarcerated under conditions posing a substantial risk of harm.  *See Holden,* 663 F.3d at 341.  There is no evidence indicating Plaintiff and Alexander had a history of physical altercations or that Alexander had a propensity for violence.  Additionally, verbal altercations and threats are common among inmates in a jail setting. *See Pagels v. Morrison,* 335 F.3d 736, 740-41 (8th Cir. 2003).  Therefore, the verbal altercation

over a bottom bunk alone does not indicate Plaintiff was incarcerated under conditions posing a substantial risk of harm.

Even if Plaintiff could show he was incarcerated under conditions posing a substantial risk of harm, he cannot show Davis was deliberately indifferent to his safety. It is undisputed that Alexander, the aggressor in the situation, informed Davis the issue was settled prior to Davis returning the men to the pod. Davis, therefore, responded reasonably to any threat to Plaintiff's safety when he pulled the men from the pod and believed the issue was settled before returning them to the pod. *See Prater v. Dahm,* 89 F.3d 538, 542 (8th Cir. 1996) (official that knew of threats but received assurance from the aggressor that the issue was resolved acted reasonably in allowing the inmates contact even though the harm was not ultimately avoided) (citing *Farmers,* 511 U.S. at 844). *See aslo Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir. 1998) ("threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (quoting *Prater,* 89 F.3d at 541). Therefore, Davis's actions do not rise to deliberate indifference. *See Young,* 508 F.3d at 873. In fact the Davis appeared to act reasonably in this situation.

Accordingly, there are no genuine issues of material facts as to Plaintiff's failure to protect claim against Davis in his individual capacity.

    ii.  <u>Individual capacity claim against Defendants Foster, Delaney, and Young</u>

Plaintiff's allegations that Foster, Delaney, and Young allowed Davis to deny Plaintiff protection because he is a sex offender fails as a matter of law. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978). "[A] supervisor is not vicariously liable

9

under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  In other words, Foster, Delaney, and Young cannot be held liable merely because they supervise the individual allegedly responsible for violating Plaintiff's constitutional rights.  *Id.; see also Mark v. Nix,* 983 F .2d 138, 139–40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility).  Plaintiff failed to allege any personal involvement of Foster, Delaney, or Young in the events surrounding his fight with Alexander.  To the contrary, the record indicates Davis did not consult Foster, Delaney, or Young prior to placing Plaintiff and Alexander back in the pod together.  Therefore, Plaintiff's failure to protect claims against Foster, Delaney, and Young in their individual capacities fail as a matter of law.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED** as to Plaintiff's failure to protect claim against Defendants in their individual capacities.

    **C.**    **Medical Care**

Plaintiff claims Defendants denied him medical care by refusing to treat his broken finger, and possible strep throat or possible tuberculosis for two months.

To prevail on his denial of medical care claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying

11

or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).

      The record shows Plaintiff was booked into the CCDC on May 18, 2010 and indicated on the inmate medical form he had no medical problems that needed attention at that time.  ECF No. 26-1, p. 6.  However, Plaintiff swears, under penalty of perjury, that he filed a medical request on May 18, 2010 requesting medical services for possible strep and tuberculosis.  ECF No. 40, p. 7.  No such grievance appears on the record.  On May 24, 2010, Plaintiff filed a grievance form requesting medical attention for a sore throat and possible tuberculosis.  ECF No. ECF No. 1, p. 11.  Plaintiff saw the nurse, Maness, on May 27 or 28, 2010 for possible strep throat and tuberculosis.  ECF No. 40, p. 9.  At this same visit, Plaintiff informed Maness about his injured finger and busted lip he received in the May 26, 2010 fight.  ECF No. 40, p. 9.  Maness informed Plaintiff she would get him a doctors appointment for his finger and tuberculosis testing.  ECF No. 40, p. 10.  On June 20, 2010, Plaintiff filed a grievance because he had not seen a doctor yet.  Young responded to this grievance by telling Plaintiff he needed to file a medical request with the nurse.  ECF No. 1, p. 13.  Plaintiff filed a medical requests on June 22, 2010.  Maness responded on June 23, 2010 informing Plaintiff his appointment date was changed but he was scheduled to visit the clinic.  ECF No. 26-1, p. 20.  On July 5, 2010, Plaintiff filed another grievance requesting a visit to the clinic for medical care.  Young responded informing Plaintiff to send his request to

12

the nurse. ECF No. 1, p. 13. On July 13, 2010, Plaintiff filed a medical request regarding possible tuberculosis, a broken finger, and a clinic visit request. Maness responded stating Plaintiff would be sent to the health department for tuberculosis testing and to the doctor for his finger. ECF No. 1, p. 16. Plaintiff was taken to Magnolia Hospital on July 21, 2010 and diagnosed with a "fracture extending transversely and across the distal portion of the second bone of the ring finger" with "NO significant displacement." ECF No. 26-2, p. 2 (emphasis in original). There was no treatment indicated on the hospital records. Plaintiff's medication log shows he received Aleve, Claritin, and/or Chloraseptic consistently from May 25, 2010 through July 2, 2010. ECF No. 26-1, pp. 29-31.

Plaintiff was transferred to the Arkansas Department of Corrections ("ADC") on July 23, 2010. ECF No. 26-1, p. 27. Upon arriving at the ADC, a doctor examined Plaintiff and noted "a fracture of the left 4th finger, some swelling to the PIP joint, no dropping of the distal phalanx and some decreased grip in the left hand due to not being able to flex the 4th finger completely." ECF No. 40, p. 23. Plaintiff was placed on one arm restriction but was discharged from the ADC clinic on October 26, 2010 as his finger was healed. ECF No. 40, p. 23. Additionally, Plaintiff was tested at the ADC for tuberculosis and the result was negative. ECF No. 40, p. 17.

   i. <u>Denial of medical care</u>

It is undisputed that Plaintiff saw Maness for his possible strep throat and tuberculosis a few days after his fight with Alexander (possibly May 27 or 28, 2010) and informed her of his busted lip and injured finger at that time. ECF No. 40, p. 9. Additionally, Plaintiff received either Chloraseptic, Aleve, or Claritin consistently between May 25, 2010 and July 2, 2010. ECF No.

26-1; ECF No. 40, p. 15.[4]  Finally, Plaintiff was taken to the Magnolia Hospital for a x-ray of his finger on July 21, 2010.  ECF No. 26-2.  Accordingly, there is no genuine issue of material fact as to whether Plaintiff was denied medical care.  Plaintiff was not denied medical care.

### ii. Delay of medical care

Regarding Plaintiff's possible strep throat or tuberculosis, the record indicates Plaintiff merely disagrees with the course of treatment he was provided.  Plaintiff saw Maness for a sore throat and sinus problems on May 27 or 28, 2010 and received Aleve and/or Claritin thereafter.  It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).

Additionally, there is no verifying medical evidence in the record to indicate Plaintiff suffered any detrimental effects from the delay in his test for tuberculosis.  To the contrary, the record indicates Plaintiff does not suffer from tuberculosis and he was never diagnosed with strep throat.  Therefore, there is no genuine issue of material facts regarding Plaintiff's delay of medical care for possible strep throat and tuberculosis.  *See Laughlin,* 430 F.3d at 929 ( the objective seriousness of a delay in treatment is measured by the effect of the delay).

Regarding Plaintiff's injured finger, Defendants argue a broken finger without more does not rise to the level of a serious medical condition and even if it did Defendants were not deliberately indifferent to Plaintiff's finger injury.  Finally, Plaintiff cannot present any verifying medical evidence that the delay in his finger x-ray negatively impacted his prognosis.

---

[4] The Court notes that Plaintiff disagreed with this statement but his explanation suggest his disagreement is only to the fact that the CCDC did not pay for this medication because his family brought it to the jail.  ECF No. 40, p. 15.

It is unclear from the record whether Plaintiff's injury to his finger would have been obvious to a lay person. Therefore, viewing the facts in the light most favorable to the Plaintiff as I must at this stage, I will assume Plaintiff's finger injury was a sufficiently serious medical need.

There is no evidence on the record, however, that Defendants were deliberately indifferent to Plaintiff's finger injury. While the delay in having Plaintiff's finger x-rayed may have been negligent, it does not rise to the level of deliberate indifference. *See e.g., Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be merely negligent); *see also Bryan v. Endell,* 141 F.3d 1290 (8th Cir. 1998) (the delay in treating prisoner's broken hand rendering surgery impractical was merely negligent and did not rise to deliberate indifference as there was no evidence showing officials actually knew of the risk of harm but deliberately failed to act amounting to callousness). Further, the record shows Plaintiff received pain medication (Aleve) consistently from the May 25, 2010 through July 2, 2010 indicating Plaintiff was not left to suffer for two months with no treatment.

Moreover, Plaintiff did not provide any verifying medical evidence to show the delay in treatment of his finger negatively impacted his prognosis.[5] To the contrary, the record indicates the medical staff at the ADC released Plaintiff from one arm work restriction in November 2010 because his finger was healed. Therefore, there is no genuine issue of material fact as to Plaintiff's delay of medical care claim, regarding his finger injury. *See Laughlin,* 430 F.3d at 929 (the objective

---

[5] The Court notes Plaintiff states, under penalty of perjury, that the doctor at the Rural Health Clinic and the doctor at the ADC stated the delay caused improper healing and unnecessary pain and suffering. ECF No. 40, p. 16. The evidence in the record contradicts this allegation by Plaintiff, and therefore, the Court will not adopt it as true for purposes of this Report and Recommendation. *See Scott*, 550 U.S. at 380.

15

seriousness of a delay in treatment is measured by the effect of the delay).

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED** as to Plaintiff's denial and delay of medical care claim against all Defendants in their individual capacity.

### IV.   CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **12th day of February 2013.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE